# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ronnie Jackson,

                Plaintiff,

v.

Vicki Hereford, Jeffery White,
Michelle Saari, Donn Weber,
Jeff Gutzmer, Bradley Pluff,
Kelly McElroy, David Rieshus,
and Kent Grandlienard,

                Defendants.

Civ. No. 14-2982 (JRT/BRT)

**REPORT AND RECOMMENDATION**

Ronnie Jackson, OID #239471, MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, *pro se* Plaintiff.

Lindsay Strauss, Esq., Minnesota Attorney General's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

    This matter is before the Court on plaintiff Ronnie Jackson's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 77), Motion for Emergency Preliminary Injunctive Relief (Doc. No. 99), and Motion for an Emergency Preliminary Injunction (Doc. No. 123). Jackson's motions have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, this Court recommends that Jackson's motions for a temporary restraining order and preliminary injunction be denied.

**BACKGROUND**

Jackson, a Minnesota prisoner housed in a disciplinary segregation unit at the Minnesota Correctional Facility at Oak Park Heights ("MCF-OPH"), has filed a civil rights action under 42 U.S.C. § 1983, claiming that state correctional employees violated his Eighth Amendment and due process rights in May 2014 by providing him with inadequate medical care, securing him to a restraint board for allegedly engaging in self-injurious behavior, and denying him access to a restroom and shower. (Doc. No. 1, Compl.) Jackson's complaint, which was filed in July 2014, requests a total of $9 million in compensatory and punitive damages, as well as an injunction ordering MCF-OPH Warden Kent Grandlienard to "write a descriptive definition of self-injurious behavior" and implement policies to allow restrained prisoners to use the bathroom and shower. (*Id.* at 20 & Attach. 1 at 1–3.)

In his three motions for intermediate injunctive relief, Jackson alleges a litany of abuses perpetrated by correctional staff since July 2015, which he attributes to retaliation for the filing of this lawsuit. (*See* Doc. Nos. 77–79, 99–101, 123–125.) Jackson claims that, beginning on July 11, 2015, correctional staff confiscated his legal papers relating to this case pursuant to the Minnesota Department of Corrections' ("DOC") five-pound limit on legal materials that those in disciplinary segregation can have in their cells at one time[1]; threatened him with loss of privileges for demanding the return of all of his legal

---

[1] According to an affidavit executed by Associate Warden Tammy Wherley, Jackson's legal materials were temporarily confiscated on July 11, 2015, after it was determined that he had over five pounds of legal materials in his cell. (Doc. No. 131,
(Footnote Continued on Next Page)

papers; failed to timely deliver his legal mail; violated the Minnesota Government Data Practices Act by giving his mental health records to the defendants' counsel in this case[2]; and failed to respond to several of his intra-prison complaints (*i.e.*, kites). (Doc. No. 78, Pl.'s Mem. 1–3; Doc. No. 79, Pl.'s Decl. 1–4; Doc. No. 124, Pl.'s Mem. 1–2; Doc. No. 125, Pl.'s Decl. 5; Doc. No. 127, Pl.'s Letter 1–2.) He further alleges that, on July 28, 2015, correctional staff failed to respond to his "emergency medical complications," consisting of pale stools, lightheadedness, confusion, headaches, tremors, blurred vision, and vomiting blood clots, which he was experiencing as a result of his "serious or chronic

---

(Footnote Continued from Previous Page)
Affidavit of Tammy Wherley ("Wherley Aff.") ¶ 18.) Later, on August 7, 2015, prison staff removed a considerable portion of the approximately thirty-three pounds of legal materials that Jackson had in his cell and placed them in a separate inmate storage bin. (*See id.* ¶ 19; Doc. No. 126, Attach. 1.) Under DOC policies, inmates on disciplinary segregation status are allowed a maximum of five pounds of legal materials in their cells at any given time; all excess legal materials must be stored separately in a storage bin, though inmates involved in active litigation may rotate the materials kept in their cell on a weekly basis. (Wherley Aff. ¶¶ 16–17, 21–22; *see also* Doc. No. 131, Ex. 3, Minnesota DOC Division Directive 301.083.) It appears that Jackson was placed on disciplinary segregation status for assaulting a correctional employee in November 2014. (Wherley Aff. ¶ 3.) As this District has previously explained, the DOC's five-pound limit on legal materials is "designed to prevent those with a significant history of violating facility rules and engaging in disruptive, threatening or violent conduct from hiding contraband, accessing combustible materials or items that can be converted into weapons." *Duwenhoegger v. King*, No. 10-3965, 2012 WL 1516865, at *10 (D. Minn. Feb. 13, 2012).

[2]   Copies of Jackson's prison medical file, including his mental health records, were provided to defense counsel so that they could be produced to Jackson in this litigation pursuant to his own discovery request, which asked the defendants to produce his "complete prison medical records." (*See* Wherley Aff. ¶ 24; Doc. No. 131, Ex. 7 at 1.)

care conditions," including hypertension, hyperlipidemia, borderline personality disorder, and depression.[3] (Doc. No. 100, Pl.'s Mem. 1; Doc. No. 101, Pl.'s Decl. 2–3.)

Based on these alleged abuses, Jackson seeks a temporary restraining order prohibiting "further retaliatory actions" by prison staff and a preliminary injunction ordering the defendants to provide him with same-day delivery of his legal mail, access to a typewriter and certain legal supplies, and all of his legal materials pertaining to this case; issue a handwritten apology; respond to his kites; transfer him to the medical unit at MCF-OPH; post a security bond to cover any further "retaliatory measures against [him] for exercising his legal rights"; and pay monetary damages for violating the Minnesota Government Data Practices Act and for any legal papers that may have been lost, destroyed, or damaged. (Doc. No. 77 at 1–2; Doc. No. 99 at 1; Doc. No. 123 at 1–3; Doc. No. 124 at 1–4.) He also requests an extension of time to respond to the defendants' pending motion for summary judgment, specifically asking that he be granted twenty-one days from the return of all of his legal materials, and that this lawsuit be suspended until his motions are ruled on and his legal materials have been returned to him. (Doc. No. 123 at 2–4.)

---

[3] In her affidavit, MCF-OPH's Health Services Administrator, Kathryn Reid, states that there is no indication from prison records or prison nursing staff that Jackson reported or otherwise experienced a medical emergency on July 28, 2015. (Doc. No. 119, Affidavit of Kathryn Reid ¶¶ 5–6.) Reid asserts that Jackson's medical records from that day indicate only that he "raised several non-serious medical complaints" in a kite requesting to see a prison nurse. (*Id.* ¶ 5.)

4

ANALYSIS

The purpose of intermediate injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is to preserve the status quo and protect the plaintiff from the harms alleged in his complaint until the court has an opportunity to rule on the merits of the plaintiff's claims.[4] *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *Frye v. Minn. Dep't of Corr.*, No. 05-1327, 2006 WL 2502236, at *1 (D. Minn. Aug. 29, 2006). Because a "preliminary injunction is . . . appropriate to grant intermediate relief *of the same character as that which may be granted finally*" and not for matters "lying wholly outside the issues in the suit," *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (emphasis added), a party moving for such relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint," *Devose*, 42 F.3d at 471. A plaintiff may not obtain a preliminary injunction "based on new assertions of mistreatment that are entirely different from the claim[s] raised and the relief requested" in his underlying complaint. *Devose*, 42 F.3d at 471; *see also Omega World Travel*, 111 F.3d at 16 ("[A] preliminary injunction may never issue to prevent injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should

---

[4] Requests for a temporary restraining order and a preliminary injunction are governed by the same basic standards. *See Duwenhoegger*, 2012 WL 1516865, at *6 n.5. Indeed, a temporary restraining order is only intended to preserve the status quo pending a determination on whether to grant a preliminary injunction. *See* Fed. R. Civ. P. 65(b).

not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit.").

Jackson has not established the necessary connection between the injuries claimed in his motions for injunctive relief and the conduct asserted in his complaint. While his underlying complaint concerns the medical care and treatment he allegedly endured in May 2014, his motions for a temporary restraining order and a preliminary injunction are based on new assertions of mistreatment involving his legal mail, access to legal materials, medical care, and other alleged retaliatory conduct that occurred long after the conduct challenged in his complaint. Because the injuries claimed and the relief requested in his motions for injunctive relief are unrelated to the conduct alleged in his complaint, they cannot support a temporary restraining order or a preliminary injunction. *See Devose*, 42 F.3d at 471 (holding that "new assertions" of retaliation and mistreatment "cannot provide the basis for a preliminary injunction"); *Hale v. Wood*, 89 F.3d 840, 840 (8th Cir. 1996) ("We reject Hale's contention that defendants' allegedly threatening and retaliatory behavior mandate granting injunctive relief, because Hale failed to establish a connection between these injuries and the conduct he challenged in his complaint."); *Semler v. Ludeman*, No. 09-0732, 2010 WL 145275, at \*30 (D. Minn. Jan. 8, 2010) (denying a request for injunctive relief based on a claim that prison officials confiscated the plaintiff's legal materials because that "claim does not pertain to the claims currently before the Court—it involves an entirely different set of events that are not part of Plaintiffs' lawsuit"); *Frye*, 2006 WL 2502236, at \*1 (concluding that allegations that "prison officials seized [the plaintiff's] papers in order to inhibit his litigation" did not

warrant a preliminary injunction because they were "unrelated to the issues he raised in his complaint").

As for Jackson's requests for an extension of time to respond to the defendants' motion for summary judgment and to suspend this action until all of his legal materials have been returned to him, this Court has already granted Jackson an extension of time to respond to the summary judgment motion (*see* Doc. No. 129) and the record indicates that Jackson has access to legal materials, even if limited to five pounds at any given time. And as already explained, those requests are not properly made in a motion for a preliminary injunction because they are unrelated to the harms alleged in Jackson's underlying complaint. For these reasons, the Court recommends that Jackson's motions for a temporary restraining order and a preliminary injunction be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Ronnie Jackson's Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. No. 77), Motion for Emergency Preliminary Injunctive Relief (Doc. No. 99), and Motion for an Emergency Preliminary Injunction (Doc. No. 123) be **DENIED**.


Date: August 26, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

# NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **September 11, 2015**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).