# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| RONNIE JACKSON, | Civil No. 14-2982 (JRT/BRT) |
| Plaintiff, | |
| v. | |
| VICKI HEREFORD, JEFFERY WHITE, MICHELLE SAARI, DONN WEBER, JEFF GUTZMER, BRADLEY PLUFF, KELLY McELROY, DAVID REISHUS, *in their individual capacities*, and KENT GRANDLIENARD, *in his individual and official capacity*, | **MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE DATED JANUARY 28, 2016** |
| Defendants. | |

Ronnie Jackson, #239471, MCF-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082, *pro se*.

Lindsay Strauss, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, for defendants.

Prisoner-plaintiff Ronnie Jackson alleges in this case that prison-official defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendants moved for summary judgment, United States Magistrate Judge Becky R. Thorson recommended that the Court grant the motion, and Jackson filed objections. Because Jackson has not shown that any Defendant possessed the requisite mental state for a deliberate indifference claim, the Court will grant Defendants' motion

in part.  However, because there exists a genuine issue of material fact as to whether Gutzmer ordered the use of the restraint board as punishment, as Jackson suggests, the Court will deny Defendants' summary judgment motion as it relates to Jackson's excessive force claim against Gutzmer.  All other Defendants will be dismissed from the case.  Finally, the Court will deny Jackson's request for a preliminary injunction because Jackson defaulted on the issue and did not meet his burden.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The Magistrate Judge thoroughly reviewed the facts of this case in her R&R. (Report and Recommendation ("R&R") at 3-18, Jan. 28, 2016, Docket No. 182.)  The Court will revisit those facts only to the extent necessary to decide Jackson's objections to the R&R and provide context for the Court's order.

Jackson has been a prisoner at the Minnesota Correctional Facility at Oak Park Heights since 2012.  He has had numerous disciplinary run-ins with prison officials, has been diagnosed with depression, and on one occasion in prison he attempted suicide. (Decl. of Ronnie Jackson ("Jackson Decl.") ¶ 6, Aug. 27, 2015, Docket No. 135; Aff. of Tammy Wherley ¶¶ 6-9, July 21, 2015, Docket No. 92.)  Jackson has spent much of his prison time in solitary confinement.  (*See* Wherley Aff. ¶¶ 3-9.)

The events at issue in this case took place on May 13, 2014.  According to Jackson, on that day he woke up and noticed that he was suffering – or thought he was suffering – from the severe side effects of a drug the prison had prescribed for him.

(Jackson Decl. ¶ 7.)  From approximately 7:20 AM until 1:45 PM, Jackson's affidavit states he made multiple attempts to notify prison staff of his medical issues:  he told one corrections officer ("C.O.") at breakfast, "the nurse doing pill run" at noon, another C.O. at noon and again at 1:00 PM, and then finally an "unknown C.O." at about 1:30 PM. (*Id.* ¶ 7-12.)  Jackson also pushed the emergency "duress" button in his cell several times. (*Id.*)  According to Jackson, the last C.O. to respond – the unknown C.O. – told Jackson, "[I]f you don't stop pushing the button and harassing C.O.'s on rounds with fake requests for help you'll be placed on the board."  (*Id.* ¶ 12.)

When that unknown C.O. walked away, Jackson says he fainted, vomited, crawled to his door, and began knocking on his door with a "grease container in an attempt to alert staff I had recently fainted and my medical situation was dire."  (*Id.* ¶ 13.) According to Jackson as well as the affidavits filed by two of his neighboring prisoners, other prisoners started kicking their doors in solidarity with Jackson.  (*Id.* ¶¶ 14; Pl.'s Exs. at 60-61 ("Brown Decl.") ¶¶ 4, 6, Aug. 27, 2015, Docket No. 137; *id.* at 63-66 ("Najera Decl.").)

Defendant Sergeant Donn Weber then approached Jackson's cell and Jackson stopped knocking on his door.  (Jackson Decl. ¶ 15.)  Weber called for a "squad team" response for a "self-injurious inmate," even though according to Jackson he was not self-injurious.  (*Id.*; *cf.* Aff. of Jeffrey Gutzmer ("Gutzmer Aff.") ¶ 33, July 21, 2015, Docket No. 84 (describing Weber's call for a self-injurious inmate); Aff. of Donn Weber ("Weber Aff.") ¶ 6, July 21, 2015, Docket No. 91 (same).)

Responding to Weber's call were two nurses, including Defendant nurse Vicki Hereford, as well as Defendant Lieutenant Jeffrey Gutzmer, the second in command. Weber told Gutzmer what happened and, at least according to Jackson, suggested that Weber should be placed on a restraint board.  (Jackson Decl. ¶ 22; *see also* Weber Aff. ¶ 13 (stating that Weber told Gutzmer "what happened")).)  After Hereford and the other nurse checked Jackson's medical condition, Gutzmer ordered that Jackson be placed on the restraint board because Jackson was "self-injurious."  (Jackson Decl. ¶ 25.)

The accounts given by Weber, Gutzmer, and Hereford differ from Jackson's account in three crucial respects.  First, although Jackson asserts he was not kicking or punching his door that day, Weber and Gutzmer's affidavits state otherwise.  Weber's affidavit states, "I . . . saw Jackson through the glass in his cell door, and he was yelling and kicking and hitting his door."  (Weber Aff. ¶ 5.)  In another report, Weber stated he saw Jackson "screaming and yelling incoherently, as he punched and/or kicked the cell door."  (Aff. of Steven Ayers, Ex. 1, July 21, 2015, Docket No. 82.)  Similarly, Gutzmer's affidavit says, "I observed Jackson hitting and/or kicking his cell door." (Gutzmer Aff. ¶ 9.)  Hereford also states that Weber told her Jackson was hitting and kicking his door.  (Aff. of Vicki Hereford ("Hereford Aff.") ¶ 6, July 21, 2015, Docket No. 85.)

Second, although Jackson and his prisoner-neighbors state that Jackson's neighbors were kicking their doors, Weber and Gutzmer state they neither heard nor saw the neighboring prisoners kick and punch their doors.  Weber said, "I do not believe I saw

or heard other inmates kicking or punching their doors." (Weber Aff. ¶ 5.) Gutzmer said, "I did not observe any other inmates kicking their cell doors." (Gutzmer Aff. ¶ 9.)

Third and perhaps most importantly, the various affidavits offer contradictory reasons for why Jackson was placed on the restraint board. For example, according to Weber, "Jackson was placed on the restraint board because he was hurting himself," and "it was likely that Jackson was going to continue to hurt himself, and it was possible that Jackson could start hitting his head against his cell door, which could lead to head trauma or death." (Weber Aff. ¶¶ 17-18.) In Weber's experience, prisoners can and do hurt themselves, to the point of breaking bones, when kicking and punching their doors. (*Id.* ¶¶ 5-7, 17.) Therefore, Jackson was not placed on the restraint board as punishment, according to Weber, because "[a] restraint board is not a form of punishment." (*Id.* ¶ 8.) Gutzmer agrees that "[r]estraint boards are not used for discipline or punishment," but instead for controlling behavior that "will likely result in self-injury, injury to others, or destruction of facility property," and "to ensure facility security." (Gutzmer Aff. ¶ 32.) Accordingly, Gutzmer ordered that Jackson be placed on a restraint board because he "feared that Jackson's self-injurious behavior would continue, and that he would harm himself, as he had refused to follow a staff's directive." (*Id.* ¶ 33.) Jackson, on the other hand, states he took no self-injurious actions that day and was fully compliant with prison official demands; he suggests he was placed on the restraint board because the prison staff was annoyed with his repeated requests for medical assistance. (*See* Jackson Decl. ¶¶ 12, 22 (quoting prison official statements that suggest Jackson was placed on the restraint board as retribution for his repeated medical complaints); *cf.* Hereford Aff. ¶ 18

(stating Jackson was placed on the restraint board "because he was refusing staff directives").)

Jackson was placed on the restraint board at approximately 2:00 PM and remained there until approximately 5:30 PM.  According to Jackson, he resisted prison officials at no time during this process.  (Jackson Decl. ¶¶ 24, 28-37.)  Prison officials allowed Jackson to wear only underwear on the board although it was "extremely cold."  (*Id.* ¶¶ 26-27.)  After an hour and some time on the board, Jackson asked a C.O. not named as a defendant if he could use the restroom.  (*Id.* ¶ 30.)  That C.O. asked Jackson if he could wait until the next thirty-minute increment when the prison officials switched roles, and Jackson replied, "Yes."  (*Id.*)  When the thirty-minute mark passed, Defendant Officer Kelly McElroy entered the room, and Jackson renewed his request to use the bathroom, to which McElroy replied, according to Jackson, "[N]o, if I let you off the board to use the bathroom your time will start over because that constitutes negative behavior."  (*Id.* ¶ 31.)  At approximately 4:25 PM – 45 to 55 minutes after making his initial request for the restroom – Jackson urinated while restrained on the restraint board.  (*Id.* ¶ 32.)  The urine spread across the restraint board, down to Jackson's feet and up to his head, soaking a towel under Jackson's head.  (*Id.* ¶¶ 32-33.)  Non-defendant prison officials replaced the towel under Jackson's head at approximately 4:50 PM, but they did not otherwise clean up Jackson's urine.  (*Id.* ¶ 33.)

After Jackson was placed on the restraint board but before he urinated on himself, Defendant prison psychologist Michelle Saari evaluated his mental condition and found him to be polite, calm, and not in distress.  (Aff. of Michelle Saari ("Saari Aff.") ¶ 9,

July 21, 2015, Docket No. 89; *see also* Jackson Decl. ¶¶ 28-29.)  Saari determined that Jackson was not self-injurious or uncooperative at the time, but she did not order Jackson's removal from the board because, according to her, she did not possess that authority.  (Saari Aff. ¶¶ 11-14.)

At approximately 5:30 PM, Defendant Lieutenant Jeffery White authorized Jackson's removal from the restraint board, and Defendant Sergeant Bradley Pluff removed him from the board and escorted him back to his cell.  (*Id.* ¶¶ 34.)  Jackson was given clean clothes and a very small amount of shampoo, but was not immediately permitted to shower.  (*Id.* ¶ 38.)  When Jackson specifically requested a shower, Pluff rebuffed his requests.  (*Id.* ¶ 39-40.)  Jackson was not permitted a shower until May 15, two days after his removal from the restraint board.  (*Id.* ¶ 40.)

Defendants' affidavits give context to and in crucial respects contradict Jackson's version of the events.  For example, multiple defendants assert that Jackson resisted placement on the board and removed his headstrap multiple times, and those were the reasons he was denied the use of a restroom – prison staff could not trust that Jackson would not kick or punch when removed from restraints.  (*See* Aff. of Bradley Pluff ("Pluff Aff.") ¶ 11, July 21, 2015, Docket No. 87.; Ayers Aff. ¶¶ 15-16).)  Similarly, Jackson was not allowed a shower after being removed from the board because he was placed on "quiet status," and quiet status prisoners are, as a matter of policy, allowed showers only every other day.  (Gutzmer Aff. ¶ 25.)  Jackson received his shower in accordance with that policy, and in the meantime was permitted to clean himself with the

shampoo provided to him in his cell.  (*See id.* ¶¶ 25, 39; Aff. of Jeffrey White ¶¶ 12, July 21, 2015, Docket No. 93; Pluff Aff. ¶ 15.)

## II.    PROCEDURAL BACKGROUND

On July 23, 2014, Jackson filed a complaint in this Court alleging Defendants' actions constituted violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.    (Compl. at 17-19, July 23, 2014, Docket No. 1.) Specifically, Jackson alleged Eighth Amendment deliberate indifference claims against Defendants Hereford, Gutzmer, Saaris, White, McElroy, Pluff, Reishus, and Grandlienard, and Eighth Amendment excessive force claims against Weber and Gutzmer. (*Id.*)

After months of discovery-related litigation, Defendants moved for summary judgment, and Jackson moved the Court to issue a preliminary injunction to prevent Defendants from destroying evidence and legal papers.  (Mot. for Summ. J., July 21, 2015, Docket No. 80; Mot. for Preliminary Inj., Jan. 19, 2016, Docket No. 177.)  The Magistrate Judge issued an R&R recommending that the Court grant Defendants' motion and deny Jackson's, and then on February 9 Jackson filed objections to the R&R. Jackson objected only to the Magistrate Judge's recommendation with respect to Hereford, Gutzmer, Saari, White, and McElroy; he made no objection to the recommendation that summary judgment be awarded to Defendants with respect to the claims against Weber, Pluff, Reishus, and Grandlienard, and he made no objection with

respect to the recommendation that his motion for a preliminary injunction be denied. (Objs., Feb. 9, 2016, Docket No. 184.)

## ANALYSIS

## I.     STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."   Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).   "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."   Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."   Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

Here, Jackson objected to the Magistrate Judge's findings as to his claims against Hereford, Gutzmer, Saari, White, and McElroy.   The Court will therefore review those objections *de novo*.   Because Jackson made no objections to the Magistrate Judge's findings with respect to Weber, Pluff, Reishus, or Grandlienard, the Court will not review those findings.

## II.    EIGHTH AMENDMENT

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."   *Wilson v. Seiter*, 501 U.S. 294, 296-97

(1991) (citation omitted) (citing *Robinson v. California*, 370 U.S. 660, 666 (1962)). Jackson filed objections relating to his claims alleges that Defendants violated the Eighth Amendment both by using excessive force and by acting with deliberate indifference to the deprivation of Jackson's medical needs, human needs, and exposure to substantial risk of serious harm.  The Court will examine each set of claims in turn.

### A.      EXCESSIVE FORCE

Jackson first objects to the Magistrate Judge's finding that Defendants' motion should be granted with respect to the excessive force claim against Gutzmer.  The Eighth Amendment prohibits a government officer from using excessive force against a prisoner. *Hudson v. McMillian*, 503 U.S. 1, 5-7 (1992).  In evaluating a plaintiff's excessive force claim, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Hudson*, 503 U.S. at 7).  "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).  Thus, the question is not whether the force was necessary, but rather "whether the use of force could plausibly have been thought necessary." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).  "In making such a determination, 'it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials and any efforts made to temper

the severity of a forceful response.'"  *Smith v. Conway Cty.*, 759 F.3d 853, 858 (8th Cir. 2014)  (quoting *Hudson*, 503 U.S. at 7).

The Eighth Circuit has applied a two-prong inquiry to claims similar to Jackson's: First, did there exist a "basis for a reasonable officer to believe force was needed at that time to prevent [the prisoner] from endangering himself or others"?  *Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003) (citing *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002)).  Second, were the injuries sustained "sufficient for an excessive force claim"?  *Id.* (citing *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999)).

As to the first prong's application, if Jackson's account is to be accepted as true, then there was no reasonable basis to believe that force was necessary to prevent harm because Jackson was not kicking or punching his door.  While Gutzmer asserts that Jackson was kicking and punching his door, this factual dispute must be resolved by the trier of fact – the jury – and is inappropriate for adjudication in a summary judgment motion.  *Burgess v. Moore*, 39 F.3d 216, 217-18 (8th Cir. 1994).  The Magistrate Judge recognized as much but found the factual dispute immaterial because even if Jackson was not **actually** self-injurious, as Gutzmer contends, Gutzmer at least "had a plausible basis for believing that he had been punching and kicking his cell door, that he was engaging in potentially self-injurious or out-of-control behavior, and that the use of a restraint board was necessary to stop that behavior."  (R&R at 37.)  There are two problems with this conclusion:  First, it inappropriately requires the Court to accept as true Gutzmer and Weber's version of events – that they restrained Jackson because he was self-injurious – instead of Jackson's claim that he was restrained as retribution for hassling prison staff

for medical attention.  If Jackson's version of events is correct – and the Court must presume it correct for the purposes of this summary judgment motion – then the use of the restraint board was punishment, not a safety measure.  Second, the Magistrate Judge's finding puts too much weight on one side of the scale in another key factual dispute: whether Jackson's neighboring prisoners were kicking and punching their doors.  The Magistrate Judge found that because the neighboring prisoners were kicking and punching their doors, Weber and Gutzmer may have misperceived that noise as coming from Jackson's cell, thereby reasonably justifying their use of force to prevent Jackson's self-injury.  (R&R at 37-38.)  Crucially, however, Weber and Gutzmer both affirmatively state the other prisoners were **not** kicking or punching their doors; only Jackson was.  (Weber Aff. ¶ 5; Gutzmer Aff. ¶¶ 8-9).  If neither Jackson nor his neighbors were their kicking doors, it may very well have been unreasonable for Weber and Gutzmer to assume that Jackson was self-injurious.  *Thompson*, 350 F.3d at 735.

On the second prong, the Eighth Circuit has recognized that using a restraint board for punishment, and denying the use of a restroom as part of that punishment, can create an injury sufficient for an excessive force claim.  *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (considering a restraint board sufficient force for the purposes of an Eighth Amendment excessive force claim); *cf. Muehler v. Mena*, 544 U.S. 93, 99 (2005) (considering restraint in handcuffs a sufficient type of force for purposes of a Fourth Amendment excessive force claim).  Although it may be argued that in Jackson's case the degree of force was not excessive, that is an issue to be decided at trial, not on summary judgment.  *Walker*, 526 F.3d at 1188 (finding "trialworthy" the issue of whether the use

of restraint board on a prisoner "was an excessive and disproportionate use of force, amounting to cruel and unusual punishment").

The Magistrate Judge cites a number of cases in which courts upheld more aggressive uses of force against excessive force claims. But the issue in each of those cases was whether an aggressive form of force could be used to subdue a prisoner who was at risk of harming himself or others. *See, e.g.*, *Scroggins v. Davis*, 346 F. App'x 504, 505 (8th Cir. 2009) (prisoner who "scuffle[d]" with guard); *Key v. McKinney*, 176 F.3d at 1083, 1085-86 (8th Cir. 1999) (prisoner who threw water on guard); *Williams v. Delo*, 49 F.3d 442, 443-47 (8th Cir. 1995) (prisoner who punched one guard in the face and choked another). None of those cases involved the factual scenario here: if Jackson is to be believed, Gutzmer used the restraint board for retribution and punishment, not for incapacitation to prevent harm. It very well may be that a reasonable jury would not find Jackson's narrative credible, but his story, that he was punished for being a hassle and an annoyance, is not so far-fetched that no reasonable jury could find it persuasive.

Jackson also objects to the Magistrate Judge's finding that Gutzmer is protected by qualified immunity. The Court will sustain this objection. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093

(2012)).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)).

Here, Gutzmer's qualified immunity defense rises and falls with the merits of Jackson's claims.  Eighth Circuit precedent makes clear that using a restraint board for punishment as opposed to incapacitation may constitute an Eighth Amendment violation. *Walker*, 526 F.3d at 1188 (reversing district court for granting summary judgment to prison officials in excessive force case where prisoner-plaintiff did not pose "any threat").  Not only is that the law, but Gutzmer knew the restraint board was not to be used as punishment.  (Gutzmer Aff. ¶ 32.)  And Jackson's claim is exactly that:  he was subjected to the restraint board as punishment, not to prevent self-harm despite what prison officials may say.  Therefore if the fact-finder were to find that Gutzmer used the restraint board as punishment and not for incapacitation, he would have acted in violation of clearly established Eighth Circuit precedent interpreting the Eighth Amendment, and Gutzmer's qualified immunity defense would fail.

The Court will therefore deny Defendants' motion with respect to Jackson's claims against Gutzmer.

## B.    DELIBERATE INDIFFERENCE

Jackson also filed objections related to his Eighth Amendment deliberate indifference claims against Hereford, Saari, White, and McElroy.  In a line of cases beginning with *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court established

that a prisoner may recover damages under § 1983 and the Eighth Amendment for a government officer's "deliberate indifference" as to certain deprivations if the prisoner meets two doctrinal elements, one "objective" and one "subjective." *Wilson*, 501 U.S. at 296-98. First, a plaintiff must show he or she has suffered a "deprivation [that was] sufficiently serious" as an objective matter. *Id.* at 298. The Supreme Court has identified several categories of sufficiently serious deprivations, including deprivation relating to "serious medical needs," *Estelle*, 429 U.S. at 104, "deprivation of . . . identifiable human need[s] such as food, warmth, or exercise," *Wilson*, 501 U.S. at 304, and being subjected to "a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A government officer's use of excessive force fits into the "substantial risk of serious harm" category. *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1395 (8th Cir. 1997).

Second, a plaintiff alleging deliberate indifference must show that the defendant actually and subjectively "act[ed] with a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. This standard is "extremely high" and "requires a mental state of 'more . . . than gross negligence.'" *Saylor v. Nebraska*, No. 14-3889, 2016 WL 362230, at *3 (8th Cir. Jan. 29, 2016) (alteration in original) (quoting *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014)). "It 'requires a mental state 'akin to criminal recklessness.'" *Id.* (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)).

### 1.     Hereford

Jackson's claim against Hereford is that she acted with deliberate indifference to his medical needs.  In the context of medical needs, a medical condition is objectively a sufficiently serious deprivation "if the prisoner was diagnosed by a doctor or [the medical condition] is so obvious that a lay person would recognize the medical need." *Id.* (citing *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014)).  As for the second prong in the context of medical needs, even conduct that amounts to medical malpractice is not necessarily sufficient to create Eighth Amendment liability.  *Id.*

Here, the Court agrees with the Magistrate Judge's findings that Jackson has met neither the first nor the second prong with respect to his claims against Hereford. Jackson's only objections to the contrary are that Hereford failed to fill out the proper medical forms, document key indicators of his health, record that he was shaking in her reports, and generally to perform a proper medical inquiry.  (Objs. at 3-7; *see also* Jackson's Letter to District Judge at 1, March 11, 2016, Docket No. 187 (restating argument that Hereford failed to conduct a proper examination).)  Even if all of Jackson's assertions are true, they do not show that his alleged medical needs were previously diagnosed by a doctor, or were so serious that a lay person might recognize his medical need.  Additionally, the Magistrate Judge's finding that Jackson has failed to show that Hereford possessed a mental state akin to criminal recklessness still holds.  The Court will therefore overrule Jackson's objections with respect to Hereford's conduct in this case.

### 2.     Saari and White

Jackson next alleges that Saari and White are liable for deliberate indifference for failing to intervene and halt the allegedly excessive force – the use of the restraint board as punishment.   Jackson claims that Saari and White each knew or should have known that Jackson was being subjected to excessive force and that they each had the ability to intervene yet declined to do so.   But even if the use of the restraint board was excessive force – a question the Court may not decide here today – Jackson has still failed to show that Saari and White had the mental state necessary to sustain his deliberate indifference claim.   First, Jackson has presented no evidence that Saari and White subjectively knew that Jackson had been placed on the board without a proper finding that he was self-injurious (again assuming that he was not self-injurious).[1]   Second, the Court may not presume Saari and White possessed the necessary mental state.   Courts may infer that a prison official had the requisite mental state where the excessive force was "obvious" or part of a pattern or practice of excessive force, but a single incident is insufficient to create liability for an officer uninvolved in the actual application of excessive force.   *Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007).   Here, even viewing the facts in the light

---

[1] Jackson argues the Court should apply a less-stringent mental state requirement and ask only whether the officer in question had reason to know that excessive force was being used, instead of the "akin to criminal recklessness" standard.   In support of his argument, Jackson relies on *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015).   *Hollingsworth*, however, involved an excessive force-deliberate indifference-failure to intervene claim brought under the Fourth Amendment, not the Eighth Amendment.   More importantly, the rule in *Hollingsworth* conflicts with the traditional rule for Eighth Amendment claims, reaffirmed just a few months ago by the Eighth Circuit, that a subjective mental state akin to criminal reckless is necessary for a deliberate indifference claim.   *Saylor*, 2016 WL 362230, at *3.   To the extent *Saylor* conflicts with *Hollingsworth*, the Court will follow *Saylor* because it was decided more recently.

most favorable to Jackson, nothing indicates a reasonable person in Saari or White's shoes would have thought the use of the restraint board **obviously** excessive force. Additionally, Jackson has produced no facts suggesting that what happened to him was one incident in a series of instances of excessive force.

The Court therefore will overrule Jackson's objections and grant summary judgment with respect to Jackson's claims against White and Saari.

### 3.    McElroy

Finally, Jackson argues that McElroy was liable for deliberate indifference because he declined to allow Jackson the use of a restroom while Jackson was on the restraint board.  At the time that McElroy declined Jackson's request for a restroom, less than thirty minutes had passed since Jackson's initial request, and the Magistrate Judge found that such a delay was not long enough to constitute a sufficiently serious deprivation for purposes of deliberate-indifference doctrine.  The Court agrees.  While the Constitution prohibits deliberate indifference, it "does not mandate comfortable prisons." *Farmer*, 511 U.S. at 832-33 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  The denial of a restroom for less than an hour may not be ideal, but it is not unconstitutional.  In support of Jackson's argument to the contrary, he relies heavily on *Hope v. Pelzer*, 536 U.S. 730 (2002).  In *Hope*, however, the prisoner was handcuffed to a hitching post in the hot sun and given no bathroom break and no water for seven hours. *Id.* at 738.   The cumulative effect of those circumstances constituted an Eighth Amendment deprivation.  *Id.*   Here, by comparison, Jackson was restrained indoors for

three-and-a-half hours in accordance with an otherwise legal restraint policy.  While the difference between an acceptable-if-unfortunate lack of comfort and an unconstitutional deprivation is a matter of degree, it is nonetheless appropriate for the Court to engage in exactly that type of incremental circumstances-based analysis here.  *See Smith v. Copeland*, 87 F.3d 265, 267 (8th Cir. 1996) (stating that conditions "tolerable for a few days are intolerably cruel for weeks or months").  On the facts of Jackson's case, the denial of use of a restroom for less than an hour after a request was made did not constitute a sufficiently serious deprivation for Eighth Amendment purposes.

Jackson also briefly argues that the Magistrate Judge should have found that McElroy acted with deliberate indifference by violating Department of Corrections policy.  But even if McElroy did violate that policy – an assertion Defendants dispute –a prison official "does not *ipso facto* violate the Constitution" merely by violating a prison policy. *Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014).  Because Jackson has not shown that McElroy's refusal to allow him use of the restroom created a sufficiently serious deprivation, the Court will overrule Jackson's objections and grant Defendants' summary judgment motion with respect to Jackson's claims against McElroy.

## III.    PRELIMINARY INJUNCTION

Jackson did not object to the Magistrate Judge's recommendation that his motion for a preliminary injunction be denied as moot.  Nevertheless, the Court will briefly address the motion in light of the Court's finding that Jackson's claims against Gutzmer survive Defendants' summary judgment motion.  Jackson alleges that Defendants have

destroyed some of his legal work product and he is concerned they will do so again in the future.  (Decl. of Ronnie Jackson in Supp. of Mot. for Preliminary Inj. ¶¶ 1-9, Jan. 19, 2016, Docket No. 178.)  He therefore requests that the Court enjoin Defendants from "destroying or sending out the plaintiff's legal papers," and require Defendants to replace and provide reimbursement for already "destroyed, sent out, or lost legal materials." (Mot. for Preliminary Inj. ¶¶ 1, 2.)

The Court finds that the motion for preliminary injunction must be denied, for three reasons.  First, Jackson did not object to the Magistrate Judge's recommendation that his motion be denied; he therefore defaulted on the issue.  Second, Jackson, as the moving party, did not meet his burden of showing that the following four factors weigh in his favor:  (1) "threat of irreparable injury to the movant," (2) "the balance between this harm and harm the injunction would inflict," (3) "the movant's likelihood of success on the merits," and (4) "the public interest."  *H&R Block Tax Servs. LLC v. Acevedo-Lopez*, 742 F.3d 1074, 1077 (8th Cir. 2014).  Neither Jackson's motion nor his affidavit explicitly addresses any of these factors.  Third and finally, the Court notes that even absent an injunction, Defendants are likely subject to a general duty to preserve evidence, and that duty is enforceable with sanctions.  *See Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012) (discussing sanctions for the destruction of evidence).  The Court makes no factual or legal determinations about any alleged destruction of evidence today, but raises the issue only to note that Jackson's motion is not the only means of addressing his concerns, should they continue.

## CONCLUSION

Because genuine issues of material fact exist relating to Gutzmer's role in ordering Jackson's placement on the restraint board, summary judgment with respect to the excessive force claim against Gutzmer is inappropriate at this time.  However, the Court has reviewed all of Jackson's remaining objections as to the other defendants and finds that the remainder of the Magistrate Judge's recommendations are correct.  The Court will overrule all of Jackson's objections except those having to do with his excessive force claim against Gutzmer, and grant summary judgment with respect to all other defendants.  Jackson's preliminary injunction motion is also denied.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, Jackson's Objections [Docket No. 184] are **OVERRULED in part** and **SUSTAINED in part**, and the Magistrate Judge's Report and Recommendation [Docket No. 182] is **ADOPTED in part** and **REJECTED in part**.  Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion for Summary Judgment [Docket No. 80] is **GRANTED** with respect to all of Jackson's claims against Defendants Hereford, White, Saari, Weber, Pluff, McElroy, Rishus, and Grandlienard.

2.     Defendants' Motion for Summary Judgment [Docket No. 80] is **GRANTED** with respect to Jackson's deliberate indifference claim against Defendant Gutzmer.

3.     Defendants' Motion for Summary Judgment [Docket No. 80] is **DENIED** with respect to Jackson's excessive force claim against Defendant Gutzmer.

4.     Jackson's Motion for Preliminary Injunction [Docket No. 177] is **DENIED**.

DATED:  March 31, 2016
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
Chief Judge
United States District Court